EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico Recurrido v. Juan Francisco Torres Huertas Peticionario | 2026 TSPR 48 218 DPR ___ |

Número del Caso: CC-2026-0240

Fecha: 1 de mayo de 2026

Tribunal de Apelaciones:

Panel IV

Representante legal de la parte peticionaria:

Lcda. Marangely González Correa
Sociedad para Asistencia Legal

Materia: Resolución del Tribunal con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                CC-2026-0240      Certiorari

Juan Francisco Torres Huertas

    Peticionario


## RESOLUCIÓN

En San Juan, Puerto Rico, a 1 de mayo de 2026.

Examinada la *Petición de certiorari* y la *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción* presentadas en este caso, se provee no ha lugar a ambas.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió un Voto Particular Disidente al cual se unió la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Estrella Martínez proveería ha lugar tanto a la *Petición de certiorari,* como a la *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción*.


                     Javier O. Sepúlveda Rodríguez
                     Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                     CC-2026-0240

Juan Francisco Torres Huertas

    Peticionario

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 1 de mayo de 2026.

En *Pueblo v. Torres Huertas*, 216 DPR ___, 2025 TSPR 79, una mayoría de este Foro resolvió que las manifestaciones incriminatorias del Sr. Juan F. Torres Huertas (en adelante, "señor Torres Huertas"), -- contenidas en las notas del agente investigador del caso, el Sr. Anthony O. Egea Guardarrama (en adelante, "agente Egea Guardarrama") --, eran admisibles en evidencia.[1] Lo anterior, al concluir que el señor Torres Huertas había renunciado de forma voluntaria, consciente e

---

[1] El Juez Asociado señor Estrella Martínez disintió y emitió expresiones a las cuales se unió la Jueza Presidenta Oronoz Rodríguez. A su vez, el Juez que suscribe disintió y emitió expresiones, a las cuales también se unió la Jueza Presidenta Oronoz Rodríguez. La disidencia, en esencia, señaló que las notas del agente Egea Guardarrama constituían prueba acumulativa que podría causar perjuicio indebido frente al Jurado.

inteligente a su derecho constitucional a la no autoincriminación.

**En aquella ocasión, -- y desde la disidencia --, sostuvimos que la admisión de las referidas notas, al confrontarlas con lo dispuesto en la Regla 403 de Evidencia, 32 LPRA Ap. VI, planteaba serias preocupaciones. Particularmente, advertimos que las notas del agente Egea Guardarrama debían excluirse, debido a que, a nuestro juicio, su posible valor probatorio quedaba sustancialmente superado por su riesgo de causar un perjuicio indebido ante el Jurado, así como por constituir prueba acumulativa.**

Hoy, el caso retorna ante nuestra consideración en un contexto distinto, pero con implicaciones similares. No obstante, una mayoría de mis compañeras y compañeros de estrado opta por invalidar la discreción del Tribunal de Primera Instancia, -- quien tiene ante sí al Jurado --, y permite la inclusión de prueba que, insistimos, no tiene otra finalidad que no sea la de causar un perjuicio indebido. De dicho proceder, disentimos. Nos explicamos.

## I.

En extrema síntesis, el caso de epígrafe tuvo su génesis en varias denuncias presentadas por el Ministerio Público en contra del señor Torres Huertas en enero de 2021, por hechos relacionados con el alegado asesinato de los Sres. Alex Elías Díaz y Jesús A. Elías Crespo, así como por la alegada tentativa de asesinato del Sr. Francisco J. La Santa Lozada. El 20 de enero de 2021, el Tribunal de Primera Instancia determinó causa

para arresto, -- en ausencia --, por múltiples delitos, incluyendo asesinato en primer grado, tentativa de asesinato, conspiración y varias infracciones a la Ley de Armas.

**Posteriormente, agentes del Negociado de la Policía de Puerto Rico arrestaron al señor Torres Huertas y lo trasladaron a la División de Homicidios de Caguas. Estando allí, éste fue interrogado por el agente Egea Guardarrama, quien tomó notas durante dicho proceso.**

Tras celebrar una vista preliminar, el foro primario determinó que hubo causa probable para acusar al señor Torres Huertas por los delitos antes mencionados.[2] Iniciado el juicio por jurado, el 9 de julio de 2024 el Ministerio Público solicitó que se admitieran en evidencia tres documentos: (1) las advertencias de ley realizadas por el agente Egea Guardarrama al señor Torres Huertas el 22 de enero de 2021 a las 12:45 p.m.; (2) **las notas tomadas el mismo día por el referido agente durante el interrogatorio en cuestión**; y (3) las advertencias de ley hechas por la Fiscal Auxiliar Lcda. Maribel Mojica Franceschi el 22 de enero de 2021 a las 6:12 p.m.

En desacuerdo con tal solicitud, el señor Torres Huertas requirió que se celebrara una vista al amparo de la Regla 109(c) de Evidencia, 32 LPRA Ap. VI, para impugnar la admisibilidad de dicha prueba.

---

[2] En particular, por los siguientes delitos: (1) dos cargos por violación al Art. 93(a) del Código Penal; (2) un cargo por tentativa de violación al Art. 93(a) del Código Penal; (3) un cargo por infracción al Art. 244 del Código Penal; (4) seis cargos por violaciones al Art. 6.0 de la Ley de Armas; (5) dos cargos por infracciones al Art. 6.09 de la Ley de Armas y; (6) cinco cargos por violaciones al Art. 6.14(A) de la Ley de Armas.

**Celebrada la vista solicitada y evaluados los planteamientos de las partes, el Tribunal de Primera Instancia determinó que los dos (2) documentos de advertencias de ley eran admisibles, más no así las notas del agente. Según el razonamiento del foro primario, el Ministerio Público no pudo demostrar que el señor Torres Huertas renunció, de manera voluntaria e inteligente, a su derecho a la no autoincriminación.**

Inconforme con tal proceder, el 23 de agosto de 2024 el Ministerio Público acudió al Tribunal de Apelaciones mediante un recurso de *Certiorari* y, el 12 de septiembre de 2024, presentó una *Solicitud en auxilio de jurisdicción*. No obstante, el 16 de septiembre de 2024 el foro apelativo intermedió denegó ambas solicitudes.

En desacuerdo todavía, el Ministerio Público acudió ante nos mediante una *Petición de certiorari* y una *Urgente solicitud en auxilio de jurisdicción*. En esa ocasión, el Estado nos solicitó que revocáramos la determinación del Tribunal de Primera Instancia de suprimir las notas del agente Egea Guardarrama. A su juicio, la evidencia presentada demostraba que el señor Torres Huertas había ofrecido su confesión de manera voluntaria e inteligente.

**Expedido el recurso, como adelantamos, una mayoría de este Tribunal concluyó que, en efecto, la renuncia del señor Torres Huertas a su derecho a la no autoincriminación había sido válida. Así pues, determinó que procedía la admisión en evidencia de las mencionadas notas.**

Devuelto el caso al foro primario, -- y ya más en lo relacionado con los asuntos que hoy nos ocupan --, el 17 de septiembre de 2025 el señor Torres Huertas presentó una solicitud al amparo de la Regla 403 de Evidencia, *supra*. En virtud de dicha petición, éste solicitó la eliminación de ciertas expresiones contenidas en las notas del agente Egea Guardarrama, por entender que su admisión podría causar perjuicio indebido ante el Jurado.

En apoyo de su solicitud, el señor Torres Huertas argumentó que dichas expresiones eran impertinentes, podían generar confusión y no reflejaban fielmente la totalidad del intercambio ocurrido durante el interrogatorio. Por su parte, el Ministerio Público se opuso, bajo el argumento de que este Tribunal ya había resuelto la admisibilidad de las referidas notas y que no procedía excluirlas por un fundamento distinto.

**Evaluados los planteamientos de las partes, el foro primario determinó que procedía la supresión de parte de las notas del agente Egea Guardarrama. En particular, el Tribunal de Primera Instancia, -- en el ejercicio de la amplia discreción que le reconoce nuestro ordenamiento jurídico --, ordenó eliminar las siguientes oraciones: (1) "[m]e considero un peligro, me gusta matar gente, yo me la vivo"; y (2) "[d]e verdad él más participación que tuvo fui yo. Pa' 300 años de cárcel prefiero la pena de muerte".[3] Ello, por entender que su**

---

[3] Surge del expediente ante nuestra consideración que el foro primario eliminó otras expresiones. Sin embargo, el Ministerio Público se opuso sólo a la eliminación de las aquí mencionadas.

**valor probatorio, en un juicio por Jurado, queda sustancialmente superado por el riesgo de causar un perjuicio indebido.**

Inconforme con el proceder del foro primario, el 30 de diciembre de 2025 el Ministerio Público presentó una *Petición de certiorari* ante el Tribunal de Apelaciones. En ésta, dicha parte alegó que el Tribunal de Primera Instancia había errado y abusado de su discreción al eliminar parte de las referidas notas, a pesar de que este Alto Foro había ordenado la admisión en evidencia de las declaraciones incriminatorias. Asimismo, adujo que parte del contenido de las oraciones eliminadas era pertinente y no causaba perjuicio indebido.

**Sometida la controversia ante su consideración, el 26 de febrero de 2026 el foro apelativo intermedio emitió una *Sentencia* mediante la cual revocó la *Resolución* del Tribunal de Primera Instancia impugnada. En síntesis, el Tribunal de Apelaciones concluyó que la solicitud de eliminación de parte de las notas tomadas por el agente Egea Guardarrama constituía cosa juzgada. A su entender, en la *Opinión* emitida por este Tribunal en el caso *Pueblo v. Torres Huertas*, *supra*, y en el caso de epígrafe, concurren la más perfecta identidad entre las cosas, causas y personas.**

En desacuerdo con el revés judicial, el 13 de abril de 2026 el señor Torres Huertas acudió ante nos mediante una *Petición de certiorari*. A su vez, el 23 de abril de 2026 presentó una *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción*.

En la petición de auxilio de jurisdicción, el señor Torres Huertas sostiene que la controversia previamente planteada por el Ministerio Público, -- resuelta por esta Curia en 2025 --, se circunscribió a la admisión de las referidas notas a la luz del derecho constitucional a la no autoincriminación. A partir de ello, argumenta que el fundamento que ahora invoca para la exclusión es distinto, por lo que nos encontramos ante una controversia diferente. Finalmente, solicita la pronta intervención de este Foro, dado que la continuación del juicio está pautada para el 4 de mayo de 2026.

Por otra parte, en su *Petición de certiorari*, el señor Torres Huertas enfatiza que la controversia actual nace de lo dispuesto en la Regla 403 de Evidencia, *supra*, y no de una norma de rango constitucional. Asimismo, señala que corresponde al foro primario ejercer su discreción al evaluar este tipo de determinación probatoria.

**De igual forma, el señor Torres Huertas alega que no persigue la exclusión total de las notas del agente Egea Guardarrama, sino únicamente de expresiones específicas, las cuales entiende que: (1) pueden ser reproducidas verbalmente por el agente Egea Guardarrama; (2) son impertinentes respecto a los hechos ante la consideración del Jurado y del tribunal; y (3) constituyen expresiones del propio agente, y no de él. Por consiguiente, nos solicita que revoquemos la determinación del foro apelativo intermedio y confirmemos la *Resolución* del Tribunal de Primera Instancia.**

Como ya mencionamos, hoy, una mayoría ha optado por denegar los recursos presentados por el señor Torres Huertas. Con tal proceder, mis compañeras y compañeros de estrado privan al foro primario de su facultad, de manejar el caso, de controlar la presentación de la prueba ante el Jurado y de excluir aquella evidencia cuyo efecto perjudicial supere su valor probatorio. Ello, pese a que dicho tribunal es quien se encuentra en mejor posición para aquilatar el contexto en que la evidencia será presentada y su posible impacto en los miembros del Jurado. De tal proceder, como mencionamos anteriormente, disentimos. Explicamos por qué.

II.

A.

Como es sabido, la Regla 403 de Evidencia, *supra*, constituye un mecanismo esencial para salvaguardar la integridad del proceso adjudicativo, particularmente en juicios por Jurado. La misma provee para que, aun cuando determinada prueba sea pertinente y no exista una regla de exclusión que impida admitirla, ésta pueda ser excluida a discreción del tribunal. *Íd.* Lo anterior, cuando el valor probatorio de dicha evidencia quede sustancialmente superado por el riesgo, entre otros, de causar perjuicio indebido. *Íd.*

Respecto al elemento de perjuicio indebido, hemos aclarado que toda prueba es perjudicial en la medida que favorece a una parte y perjudica a otra, pero éste no es el tipo de perjuicio al que se refiere la regla. *Pueblo v. Santiago Irizarry*, 198 DPR 35, 44 (2017); *Pueblo v. Ortiz Pérez*, 123 DPR 216, 228

(1941). **Más bien, se trata de prueba "que puede conducir a un resultado erróneo porque se presentó con el propósito primordial de crear pasión y prejuicio en el [J]urado".** (Énfasis suplido). *Pueblo v. Santiago Irizarry*, *supra*. **Entiéndase, aquella evidencia que se trae para apelar "meramente –– y aunque no únicamente –– a los sentimientos y a la emoción".** (Énfasis suplido). *Pueblo v. Ortiz Pérez*, *supra*, pág. 228.

Sobre el particular, el Prof. Ernesto L. Chiesa Aponte, al estudiar el contenido de la referida disposición legal, nos recuerda que **"[e]s crucial advertir la amplia discreción que tiene el Tribunal de Primera Instancia para resolver un planteamiento bajo la regla 403[, puesto que sólo] en caso de 'abuso de discreción' debe un tribunal apelativo intervenir con el ejercicio de tal discreción".** (Énfasis suplido). E. L. Chiesa Aponte, *Compendio de Evidencia (en el sistema adversarial)*, Ed. Tirant Lo Blanch, 2021, pág. 39. **Así, "le conferimos gran deferencia" a tales determinaciones.** (Énfasis suplido). *Pueblo v. Rivera Nazario*, 141 DPR 865, 893 (1996).

En virtud de lo anterior, los tribunales apelativos no vienen llamados a analizar la idoneidad, o no, de una exclusión de evidencia al amparo de la mencionada regla, sino a determinar si la supresión de ésta constituye un "abuso de discreción". *Íd.* De este modo, no es suficiente que se piense que la eliminación de evidencia fue inapropiada, sino que el foro primario transgredió los límites de la autoridad que le confiere la Regla 403 de Evidencia, *supra*, al concluir que procede su eliminación ante las circunstancias que tiene ante sí.

Asimismo, y citando lo resuelto por el Tribunal Supremo de los Estados Unidos en *Old Chief v. United States*, 519 US 172 (1997), Chiesa Aponte sostiene que "**constituye un abuso de discreción no excluir evidencia bajo la Regla 403, cuando la evidencia ofrecida tiene claro riesgo de causar perjuicio indebido a la otra parte, si hay disponible otra evidencia de igual valor probatorio que no tiene tal riesgo de causar perjuicio indebido**". (Énfasis suplido). E. L. Chiesa Aponte, *Reglas de Evidencia comentadas*, Ed. Situm, 2016, pág. 78.

B.

De otra parte, la doctrina de cosa juzgada tiene como propósito "poner fin a los litigios luego de que los tribunales los adjudiquen de forma definitiva". *Ortiz Matías v. Mora Development*, 187 DPR 649, 655 (2013). Ello, con la finalidad de garantizar la certidumbre y seguridad de los derechos declarados mediante resolución judicial, y, así, finalizar los pleitos y evitar someter a los ciudadanos y ciudadanas a las molestias de tener que litigar dos veces una misma causa. *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 294 (2012); *SLG Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 154 (2011); *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008).

**Ahora bien, dicha doctrina no procede de forma inflexible y automática. Para que la doctrina de cosa juzgada se configure, es necesario que concurra la más perfecta identidad de causas, cosas, partes y la calidad en que lo fueron.** *Fonseca et al. v. Hosp. HIMA*, *supra*; *Mun. de San Juan v. Bosque Real S.E.*, 158 DPR 743, 769 (2003); *Worldwide Food Dis. Inc. v. Colón et al*,

133 DPR 827, 833 (1993). Así pues, el efecto de la aplicación de esta doctrina es "que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas[,] y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior". *Méndez v. Fundación*, 165 DPR 253, 267 (2005). Tal no es el caso de autos.

C.

De igual manera, es norma reiterada en nuestro ordenamiento legal que los derechos y las obligaciones adjudicados mediante un dictamen judicial que adviene final y firme constituyen ley del caso. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 8 (2016); *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Consecuentemente, y de ordinario, las controversias que han sido adjudicadas por el foro primario o por un tribunal apelativo no pueden rexaminarse. *Pueblo v. Serrano Chang*, 201 DPR 643, 653 (2018); *Cacho Pérez v. Hatton Gotay*, *supra*, pág. 9; *Félix v. Las Haciendas*, *supra*.

**Ahora bien, este Tribunal ha sentenciado que dicha doctrina, -- la de la ley del caso --, no es un mandato inflexible, "sino que recoge la costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales".** (Énfasis suplido). *Mgmt. Adm. Servs. Corp. v. ELA*, *supra*, pág. 607. **En situaciones excepcionales, si el caso vuelve ante la**

**consideración del tribunal y éste entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia puede aplicar una norma de derecho distinta.** *Félix v. Las Haciendas*, *supra*, pág. 844; *Piazza Vélez c. Isla del Río, Inc.*, 158 DPR 440, 470 (2003); *Mgmt Adm. Servs. Corp. v. E.L.A.*, *supra*, pág. 608.

Nos corresponde, pues, determinar, -- desde la disidencia --, si la actuación del foro primario en el presente caso se ajustó al marco normativo antes expuesto.

III.

Como adelantamos, el señor Torres Huertas, en su *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción* y *Petición de certiorari*, explica que la controversia previamente planteada por el Ministerio Público, y resuelta por esta Curia en el año 2025, se circunscribió a la admisión de las referidas notas a la luz del derecho constitucional a la no autoincriminación. Así pues, argumenta que el fundamento que ahora invoca para la exclusión, -- sólo de ciertas expresiones --, es distinto, por lo que, a su juicio, nos encontramos ante una controversia diferente. Le asiste la razón al señor Torres Huertas.

**Y es que, distinto a lo sentenciado por el foro apelativo intermedio, somos del criterio que, en este caso, no aplican las doctrinas de cosa juzgada ni de ley del caso, pues éstas requieren que el asunto planteado haya sido considerado y resuelto, expresa o implícitamente, en una etapa anterior del**

**mismo litigio. Como mencionamos anteriormente, tal no es el caso de autos.**

Como se sabe, la determinación previa de este Tribunal, -- en *Pueblo v. Torres Huertas*, *supra* --, se limitó a resolver la validez de la renuncia del señor Torres Huertas a su derecho contra la no autoincriminación y, en consecuencia, la admisibilidad de las referidas notas desde esa perspectiva constitucional. Distinto a ello, la controversia que ahora se nos presenta se enmarca, exclusivamente, en el ámbito de la Regla 403 de Evidencia, *supra*.

**En específico, en esta ocasión, veníamos llamados y llamadas a evaluar si el Tribunal de Primera Instancia abusó de su discreción, -- a la cual, como norma general, le debemos guardar gran deferencia --, al excluir ciertas expresiones contenidas en las notas del agente Egea Guardarrama bajo el fundamento de que su potencial de causar perjuicio indebido supera su valor probatorio. Entendemos que no lo hizo.**

Como ya mencionamos, el foro primario, en el ejercicio de la discreción que le concede la Regla 403 de Evidencia, *supra*, -- y, a nuestro juicio, correctamente --, determinó que procedía la supresión de parte de las notas del agente Egea Guardarrama. En particular, el Tribunal de Primera Instancia ordenó eliminar las siguientes oraciones: (1) "[m]e considero un peligro, me gusta matar gente, yo me la vivo"; y (2) "[d]e verdad él más participación que tuvo fui yo. Pa' 300 años de cárcel prefiero la pena de muerte". Ello, al concluir que su

valor probatorio, ante un Jurado, queda sustancialmente superado por el riesgo de causar un perjuicio indebido.

Similar a como lo visualizó el foro primario, no albergamos duda alguna que el riesgo de causar perjuicio indebido al que hace referencia el Tribunal de Primera Instancia está presente en las expresiones que hoy se traen ante nuestra consideración. En ese sentido, consideramos que el Tribunal de Apelaciones, al revocar la determinación del foro primario, erró en su proceder.

Asimismo, colegimos que resulta irrelevante, para la correcta disposición de la controversia ante nuestra consideración, evaluar si la prueba suprimida se trata de admisiones de parte o de una confesión del acusado. Ello, toda vez que la Regla 403 de Evidencia, *supra*, opera con independencia de cualquier otra regla de exclusión o excepción que, de otro modo, hubiesen permitido admitirla en evidencia.

Siendo ello así, -- y contrario a lo sentenciado por una mayoría de este Tribunal --, en auxilio de nuestra jurisdicción, hubiésemos paralizado el juicio que se lleva a cabo ante el foro primario en contra del señor Torres Huertas y expedido el auto de *certiorari*, a los fines de atender en sus méritos la controversia que hoy se trae ante nuestra consideración. Por no ser éste el criterio mayoritario, disentimos.

Ángel Colón Pérez<br>
Juez Asociado